# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 5407 | DATE | 2/20/2002 |
| CASE TITLE | ROLANDO TOYOS vs. NORTHWESTERN UNIVERSITY, et al | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: defendants' Rule 12(b)(6) motion to dismiss the Title VII claims asserted in Count I and the defamation claims asserted in Count V is granted and those claims are dismissed with prejudice. The Court construes defendants' Rule 12(b)(6) motion to dismiss the Title VII claims asserted in Count II, the section 1981 claims asserted in Count III and the section 1983 claims asserted in Count IV as a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. That motion is also granted and those claims are dismissed without prejudice. This is a final and appealable order.
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | FEB 21 200 | |
| | Notified counsel by telephone. | | date docketed | 14 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | 02 FEB 20 AM 11:37 | date mailed notice | |
| TBK | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION
DOCKETED FEB 21 2002

ROLANDO TOYOS, )
)
    Plaintiff, )
)
v. ) No. 01 C 5407
) Paul E. Plunkett, Senior Judge
NORTHWESTERN UNIVERSITY and )
MICHAEL ROSENBERG, M.D., )
)
    Defendants. )

## MEMORANDUM OPINION AND ORDER

Rolando Toyos has sued defendants for their alleged violations of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq., Title VII of the Civil Rights At of 1964, 42 U.S.C. § 2000e, et seq., 42 U.S.C. §§ ("sections") 1981 and 1983 and for defamation. Defendants have filed a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss all of these claims. For the reasons set forth below, the Court: (1) grants the motion with respect to the Title VII claims asserted in Count I and the defamation claims asserted in Count V; and (2) construes defendants' motion as a Rule 12(b)(1) motion for lack of jurisdiction with respect to the Title VI, section 1981 and section 1983 claims asserted in Counts II-IV and grants the motion as to those claims.

### Facts

Toyos, who is Hispanic, graduated with honors from the University of Illinois College of Medicine in 1994. (Compl. ¶¶ 1, 4.) After graduation, Toyos began an internship in internal medicine at the Illinois Masonic Medical Center. (Id. ¶ 5.) Upon completion of the internship

program, Illinois Masonic asked Toyos to join their residency program. (Id.) Toyos declined the offer, opting instead to enter a residency program with Northwestern University Medical School's Department of Ophthalmology. (Id. ¶ 6.)

When Toyos joined the program, the Ophthalmology Department had no African-American or Hispanic faculty members. (Id. ¶ 11.) Moreover, Toyos was told by Department staff that he was the first resident of color the Department had ever had. (Id.)

When Toyos joined the residency program, its director was Dr. Rosenberg. (Id. ¶ 7.) The relationship between Toyos and Rosenberg was not a good one. Rosenberg, for example, allowed the other residents to address him as "Mickey," but he required Toyos to address him as Dr. Rosenberg. (Id. ¶ 8.) Moreover, though Rosenberg entertained questions from the other residents, he was not receptive to questions from Toyos. (Id. ¶ 8.)

His experience with other faculty members was no better. Unlike the other residents, Toyos found that mentoring relationships with faculty members were not available to him. (Id. ¶ 9.) Moreover, one professor, when speaking to other residents, referred to Toyos as "the Big Brown T." (Id. ¶ 10.)

Toyos struggled in the residency program and, in each of his first two years, scored poorly on the national examination administered to ophthalmology residents. (Id. ¶ 13.) Despite his slow start, however, Toyos successfully completed the residency program. (Id. ¶ 15.) In fact, in his final year in the program, Toyos scored higher than the other third-year residents on the national examination. (Id.)

In 1998, Toyos completed his residency and went into private practice in Tennessee. (Id. ¶ 17.) In December 2000, Toyos completed the board certification process. (Id.)

Sometime thereafter,[1] Toyos submitted an application for a license to practice medicine in the State of Florida. (Id. ¶ 18.) After receiving his application, the Florida Board of Medicine sent a request for a recommendation on Toyos to the Director of Northwestern's Department of Ophthalmology Residency Program. (Id.)

In January 2001, Dr. Rosenberg, who was not the program director at the time, responded to the Florida Board's request. (Id. ¶ 19.) Though the form is not attached to the complaint, it apparently contained a number of rating categories from which the respondent could choose, including "qualified and competent" and recommended "with some reservation." (Id.) Without elaborating, Rosenberg recommended Toyos "with some reservation." (Id.)

## The Legal Standard

On a Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief can be granted, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. Midwest Grinding Co. v. Spitz, 976 F.2d 1016, 1019 (7th Cir. 1992). No claim will be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

On a Rule 12(b)(1) motion to dismiss, the Court "may properly look beyond the jurisdictional allegations of the complaint to determine whether in fact subject matter jurisdiction exists." Sapperstein v. Hager, 188 F.3d 852, 855 (7th Cir.1999) (internal quotation marks, alterations and

---

[1] Toyos does not allege the date that he submitted his application for a license to practice medicine in the State of Florida.

-3-

citation omitted). Plaintiff cannot simply rely on his allegations to withstand an attack on the factual basis for jurisdiction. Rather, he "must submit affidavits and other relevant evidence to resolve the factual dispute." Kontos v. United States Dep't of Labor, 826 F.2d 573, 576 (7th Cir. 1987); Sapperstein, 188 F.3d at 855. At all times, the burden of establishing the existence of federal jurisdiction rests with the plaintiff. Id.

**Discussion**

In Count I, Toyos alleges that Dr. Rosenberg's recommendation to the Florida Board of Medicine violated his rights under Title VII. That statute, however, prohibits only employment discrimination. 42 U.S.C. § 2000e. Thus, plaintiff must allege that he had an employment relationship with Dr. Rosenberg and Northwestern at the time the recommendation was made, if he is to survive this motion. Alexander v. Rush North Shore Med. Ctr., 101 F.3d 487, 4 (7th Cir. 1997).

Toyos has not made the requisite allegations, an his complaint establishes that he cannot do so. Toyos was working in private practice, and had been for three years, when Dr. Rosenberg gave his recommendation to the Florida Board. (Compl. ¶¶ 17-19.) Because Toyos has affirmatively alleged that he was not employed either by Dr. Rosenberg or by Northwestern when the allegedly discriminatory recommendation was given, his Title VII claim must be dismissed.

In Count II, Toyos alleges that Dr. Rosenberg's recommendation violated his rights under Title VI. Title VI mandates that no one "be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." Id. Toyos alleges that defendants should be held liable under this statute because the recommendation denied him the benefit of his successful completion of the residency program.

-4-

(Pl.'s Mem. Resp. Defs.' Mot. Dismiss at 6.) That "benefit," Toyos' allegations imply, was the swift and sure receipt of a medical license in the State of Florida. (Compl. ¶ 21.) But Toyos does not allege, and has not produced any evidence to show, that Dr. Rosenberg's recommendation has, in fact, derailed or delayed his Florida license application. He simply alleges that it *may* do so. (See Compl. ¶ 21.) Because Dr. Rosenberg's recommendation has not yet, and may never, negatively impact Toyos' Florida licensing process, his Title VI claims are not ripe for review. See Texas v. United States, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.") (internal quotation marks and citations omitted).

In Count III, Toyos asserts a claim for violation of his rights under section 1981. Among other things, section 1981 guarantees "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship" to all people, regardless of race. 42 U.S.C. § 1981(a), (b). The contractual benefit that Toyos was allegedly denied is swift and sure licensing by the State of Florida. (Id. ¶ 21; Pl.'s Mem. Resp. Defs.' Mot. Dismiss at 8.) As we noted above, however, there is no allegation or evidence that Dr. Rosenberg's recommendation has, in fact, impeded the Florida licensing process. (Compl. ¶ 21.) At this point, whether Dr. Rosenberg's recommendation will ever deprive Toyos of the alleged benefit of his contract with Northwestern is a matter of conjecture. His section 1981 claims, therefore, are not ripe and must be dismissed.

In Count IV, Toyos alleges that Dr. Rosenberg's recommendation violated his rights under section 1983, a statute that protects Toyos from constitutional deprivations at the hands of state actors. Once again, however, Toyos does not allege that he has been deprived of any constitutional right. Rather, he says Dr. Rosenberg's recommendation may deprive him of his rights at some point

in the future. (Id. ¶ 34.) Toyos' failure to show that Dr. Rosenberg's recommendation has actually worked a deprivation renders his section 1983 claims unripe.

Finally, in Count V, Toyos alleges that Dr. Rosenberg's recommendation makes defendants liable for defamation. To state a claim for defamation, plaintiff must allege that defendants made a false statement of fact about him, that there was an unprivileged publication to a third party and that plaintiff was damaged. Krasinski v. United Parcel Serv., Inc., 530 N.E.2d 468, 471 (Ill. 1988). According to the complaint, the sum total of Dr. Rosenberg's statement about Toyos to the Florida Board of Medicine was recommended "with some reservation." (Compl. ¶ 37.) Though Dr. Rosneberg did not say that Toyos was incompetent, plaintiff contends that his recommendation conveyed that message because he could have, but did not, place Toyos in the 'qualified and competent'" category. (Id. ¶¶ 19, 37.) That is certainly one of the inferences that can be drawn from Dr. Rosenberg's recommendation, but is by no means the only one. Among the myriad of equally plausible inferences are that Dr. Rosenberg believed Toyos' medical skills were fine, but thought he was rude, arrogant or was otherwise an unpleasant colleague; disagreed with his stance on alternative treatments or managed care; believed he was distracted from his work by personal problems; or questioned his long-term commitment to the practice of medicine. The fact that all of these inferences, and countless others, can be drawn from Dr. Rosenberg's statement illustrates the fundamental flaw in Toyos' defamation claim: Dr. Rosenberg's recommendation is not a statement of fact. Because the statement recommended "with some reservation," is an opinion, not an "objectively verifiable" assertion that is "susceptible of being proved true or false," it cannot support a defamation claim. Milkovich v. Lorain Journal Co., 497 U.S. 1, 21-22 (1997); see Hopwell Vitullo, 701 N.E.2d 99, 104 (Ill. App. Ct. 1998) (statement "fired for incompetence" was too

"ambiguous and indefinite" to be actionable because it does not have "a precise and readily understood meaning" and its "veracity . . . cannot be verified").

## Conclusion

For the reasons set forth above, defendant's Rule 12(b)(6) motion to dismiss the Title VII claims asserted in Count I and the defamation claims asserted in Count V is granted and those claims are dismissed with prejudice. The Court construes defendants' Rule 12(b)(6) motion to dismiss the Title VI claims asserted in Count II, the section 1981 claims asserted in Count III and the section 1983 claims asserted in Count IV as a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. That motion is also granted and those claims are dismissed without prejudice. This is a final and appealable order.

ENTER:

_____
UNITED STATES DISTRICT JUDGE

DATED: 2-20-02